## MILLY, (a woman of color,) v. SMITH.

1. Slaves carried into Illinois, with a view to residence, and staying there long enough to acquire the character of residents, do, by virtue of such residence, become free.
2. Such a residence, as would entitle the slave to freedom, cannot be acquired without the connivance or consent of the legal owner.
3. Instruments of writing offered in evidence, which were executed in other States, and upon which depend the rights of parties litigant here, will, in the absence of the foreign law, be construed according to the laws of this State.

APPEAL from St. Louis Circuit Court.

TOMPKINS, J., delivered the opinion of the Court.

This was an action of trespass, &c., under the statute brought by Milly the appellant, against Smith the appellee, to establish a right to freedom. The appellee pleaded the general issue. Judgment was entered for the appellee, from which the appellant appeals to this Court. The facts proved at this trial are, that David Shipman, a resident of Kentucky, owned and was in possession of the appellant as a slave; that on the 17th October, 1826, while residing in Kentucky, he executed a deed to said Smith, of which a copy is here given, viz: "This indenture made this 17th day of October, 1826, between David Shipman of the one part, and Stephen Smith of the other part, witnesseth : that the said David Shipman, for and in consideration of the sum of one dollar to him in hand paid, the receipt of which he doth hereby acknowledge, hath granted, bargained and sold, and by these presents doth convey unto the said Stephen Smith, and his heirs forever, a tract of land in Shelby county, on Guess' Creek, containing 26 acres, upon which said Shipman's grist and saw mill now stands; also, a negro man named Moses, about 30 years of age; one woman named Milly, about 25 or 6 years old; one child called David, about 18 months old; Harry about 16 years; Bill about 12 or 13 years old; Sarah about 27 years old;

Milly *v.* Smith.

Eliza about 15 years old; six head of horses; one yoke of oxen and cart; ten head (37) of cattle; 30 head of sheep; 30 head of hogs; beds and furniture; house-hold and kitchen furniture of every description; farming utensils, and one clock: To have and to hold the said land, slaves and chattels, with their future increase, to him the said Stephen Smith, and his heirs, forever—and the said David Shipman covenants that he will warrant the title thereof to the said Smith, and his heirs, against the claim of all persons whatsoever, rendered, however, subject to the following conditions, that is say : that whereas the above named David Shipman is indebted to the Commonwealth's Bank in about the sum of eight hundred dollars, for which the said Stephen Smith is bound as security, and the said Shipman is also indebted to the heirs of William Cooper, in about the sum of six hundred dollars, for which said Stephen is bound as security in a replevin bond, also indebted to Elijah Warner in about the sum of one hundred and twenty dollars, an execution in the name of Helm for about one hundred and forty dollars, for which sums said Stephen is also bound as security; and is also indebted to said Stephen in his own right in about the sum of $207 due by note. Now the lands, chattels and slaves aforesaid, with their future increase, are hereby declared to be given in mortgage to secure, save, indemnify and pay the said Stephen Smith, as security, and in his own right in the several sums of money hereinbefore enumerated and mentioned; and it is hereby expressly understood and agreed between the parties, that the said David Shipman may, and is hereby permitted to retain and keep possession of the said land, slaves and other chattels with their future increase, and to have the use thereof, subject, however, to the lien hereby created; and should said Shipman, or the said Smith, at any time hereafter be able to effect a sale of the land, slaves, &c., or any part at their fair value, and apply the proceeds thereof to the payment of the liabilities and claims herein enumerated, or to the discharge of a judgment in favor of the Farmers' and Mechanics' Bank, of Shelbyville, against said Shipman, that in such case said Shipman and Smith will consent to said sale, and make title to the property so sold, in which title said Smith will release the lien hereby created. Witness, &c."

The deed is signed by both parties. This instrument of writing was recorded in Shelby county, Ky. That soon after the execution of said mortgage, said Shipman being greatly embarrassed, took the said Milly with several other of his slaves, and secretly ran away with them to Indiana: that in Jefferson county, in the State of In-(38) diana, he executed a deed of emancipation to said slaves, of whom said Milly then present was one, and acknowledged the same before a Justice of the Peace of said State. This deed bears date 3d October, 1826, but was acknowledged on 30th of same month; that immediately afterwards, said Shipman carried said Milly to Peoria county, in the State of Illinois, where he said Shipman settled, hired a farm, stocked the same and declared that he intended to reside there permanently, and has ever since resided there and kept Milly there; that said Milly resided there with him from October or November, 1826, till some time in May, 1827, at which time the defendant came thither and took said Milly secretly away against her consent, and the consent of said Shipman, and brought her to St. Louis, where the present suit for freedom was commenced; that after said Shipman had carried said plaintiff to Indiana, said Smith had paid for him $632 54 on executions which the Sheriff had against him for some of the debts above mentioned in said mortgage. This money was paid after the execution of said deed of emancipation; that said Smith never had possession of said Milly till May, 1827, when he removed her from Illinois, as above ·

Milly *v.* Smith.

stated; and that said Shipman had for several years been in possession of her, till she was taken away as before mentioned.

The Circuit Court having refused to give several instructions prayed for by the plaintiff, proceeded to instruct the jury, that if they believed from the evidence, that said Shipman executed said mortgage for a valuable consideration to said Smith, that said Smith became in virtue thereof the legal owner of said Milly, and that said Milly could not be free by the residence in Indiana and Illinois, in virtue of the ordinance of 1787, unless it appeared to their satisfaction that Smith assented to the removal of said Milly; to which last instruction the plaintiff's counsel excepted, and also excepted to the refusal of the Court to give the instructions prayed by the plaintiff, which it is not considered material to notice at this time.

This Court is not disposed to view the deed of emancipation with much favor. The plaintiff cannot be regarded as a purchaser for a valuable consideration, a slave having nothing to give; but it has often been decided by the Courts of the late Territory of Missouri, and of this State, that slaves carried into Illinois with a view to residence, and staying there long enough to acquire the character of residents, do by virtue of such residence become free. The plaintiff in the Circuit Court made out a prima facia case of freedom; but if Smith be the legal owner, and did not connive at the removal of the plaintiff from Kentucky to Indiana and Illinois, then we are of opinion that the plaintiff did not acquire her freedom by such residence.

This mortgage, as it is called, was made in Kentucky, and ought to receive in our Courts, such construction as it would there receive. What construction would there be given to it, cannot be judicially known to this Court. If, as the Circuit Court decides, Smith became, by virtue of the instrument of writing executed to him by Shipman, the legal owner of Milly, and if, as it has been contended in argument, the recording of that instrument, is, by the statutes of Kentucky, notice to all persons, of Smith's right, seme evidence of the laws of Kentucky ought, we think, to have been preserved on the record. If we are to construe the writing according to our own laws, (which must govern us where the foreign law is not proved,) we are inclined to think Shipman is the legal owner; since, by the contract, the right of possession remained in him for an indefinite time, and Smith had only a lien on her to secure the payment of debts; which lien Shipman might, at any time, have defeated, by paying those debts.

The judgment of the Circuit Court is reversed, and the cause sent back for further proceedings.